**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**NICHOLA M. McGAHA,**
   **Plaintiff,**

vs.                        **Civil No. 02-0703 RLP**

**JO ANNE B. BARNHART, Commissioner**
of the Social Security Administration,

   **Defendant.**

## MEMORANDUM OPINION AND ORDER

1.   This matter comes before the Court on the Motion of Nichola M. McGaha (Plaintiff herein) to Reverse or Remand Administrative Agency Decision. (Docket No.11). Plaintiff filed applications for disability income and supplemental security benefits on April 1, 1998. Her applications were denied initially, on reconsideration, and by an Administrative Law Judge following a hearing. Plaintiff sought review by the Appeals Council, which declined to consider her claim on April 19, 2002.

Factual Background

2.   At the time of her disability hearing in March 2000 Plaintiff was thirty-one years old. (Tr. 28). She had a GED and past work experience as a truck driver and gas station cashier. (Tr. 273, 99, 84). On January 11, 1994, Plaintiff was struck in the face with a heavy metal chain, causing displaced comminuted frontal sinus fractures with supraorbital nerve entrapment. (Tr. 218, 151, 34). She continued to complain of significant pain and facial numbness after undergoing surgical reconstruction on April 26, 1994 (Tr. 216, 218, 211), and was referred to a neurologist, Jill Marjama-Lyons, M.D., in September 1994. (Tr. 210, 212). Based on Plaintiff's complaints of daily sharp facial pain, headaches and neurological examination Dr. Marjama-Lyons diagnosed post-traumatic headache

consistent with migraine headache and tension headache, and trigeminal neuralgia.[1] (Tr. 151-153). Beginning in September 1994 and continuing through the date she last treated Plaintiff on June 13, 1996, Dr. Marjama-Lyons prescribed various medications to treat Plaintiff's pain complaints. On July 18, 1995, Dr. Marjama-Lyons stated:

> I would prefer that (she) work. She is able to sit without difficulty and should be able to perform some desk work. It would be advisable to avoid any strenuous physical activity as noted before on the physical tolerance profile form, It, indeed, is difficult for Nicola to concentrate and to work when she is experiencing severe pain from her headaches. If she fails to have adequate improvement with an adequate number of appropriate trials of medication for post-traumatic neuralgia and migraine headaches, I would next consider possible treatment forms to include acupuncture and/or local anesthetic injections.

(Tr. 141).

As of September 25, 1995, after trials of various medications had failed to relieve Plaintiff's complains of pain [2], Dr. Marjama-Lyon stated:

> (W)e have discussed in the past that I would not ok disability due to her young age and I feel this would be extremely detrimental to her overall life and mental health. I do appreciate that she has had a problem with severe trigeminal pain and has been fairly unresponsive to numerous appropriate medications. . . . I in no way think that (she) has fabricated her symptoms. I do think she truly suffers from trigeminal neuralgia, post-traumatic as well as migraine headaches. However, I do insist that she attempt to work and I am adamantly against this young lady being on disability.

(Tr. 136).

Thereafter additional medications were tried[3] and Plaintiff was referred to Joan Lewis, M.D. for pain

---

[1] "Severe, paroxysmal bursts of pain in one or more branches of the trigeminal nerve; often induced by touching trigger points in or about the mouth." Steadman's Medical Dictionary, 27th Ed. 2000.

[2] Lortab, Motrin, Vancenase Nasal spray, Tegretol, Pamelor, Dilantin, Midrin, Baclofen, Depakote, Lorcet, Cafergot, Elavil, Zoloft. (Tr.149-150, 147, 145, 140,138-139, 136-137).

[3] Tigan, Viscous Lidocaine, Gabapentin, Anaprox. (Tr. 134, 132, 128).

management.[4] (Tr. 132).

3.      The first page of Dr. Lewis' initial treatment note of December 20, 1995, is missing from the administrative record.   The second page indicates that Dr. Lewis administered a stellate ganglion block in an attempt at pain control,  and  was considering adding opioid medications "due to the incapacitating nature of (Plaintiff's) illness." (Tr. 194).  Dr. Lewis continued to treat Plaintiff through January of 1999.  She administered a series of stellate ganglion blocks which failed to provide more than several hours of  pain relief (Tr.188-193,170), prescribed opioid pain medications   which provided limited pain relief[5] (see e.g., Tr. 173, 170, 169, 168, 244-245, 232) and recommended that Plaintiff obtain psychological counseling. (Tr. 181).  On June 13, 1996, Dr. Marjama-Lyons prepared a report that was forwarded to Plaintiff's workers' compensation board, stating that Plaintiff had reached maximum medical improvement, that she had  a 50% disability based upon pain syndrome, and that should avoid bending which exacerbated facial pain and headaches.  Dr. Marjama-Lyons also recommended that Plaintiff seek psychological counseling to deal with her pain.  (Tr. 126).

4.      Plaintiff underwent  surgery in May 1997 to remove a metal plate from her left skull, in an unsuccessful attempt to reduce her pain.[6] (Tr. 208-209, 214, 43-44).     She began treatment with psychologist Diana Calderon, PhD., in the Fall of 1997, and saw her on an unknown number of occasions thereafter.[7] (Tr. 169, 165).  In March 1998, Dr. Lewis objected to a plan to taper Plaintiff

---

[4] Plaintiff had previously consulted with a psychiatrist, Dr. Hughes, in 1996.  (See Tr. 179-180, 182). Dr. Hughes' reports are not contained in the administrative record.

[5] Methadone, MS Contin, Oxycodone, Oxycontin (Tr. 184, 183, 185, 174, 173, 172, 171, 98).

[6] Surgical findings included massive and marked scar tissue and dehiscence of previous frontal sinus fracture.  (Tr. 214-215).

[7] Dr. Calderon's records consist of two identical summary reports (Tr. 270-271, 268-269).  Plaintiff testified that she saw Dr. Calderon on a monthly basis for about 1 year.  (Tr. 46).

off of narcotic medications due to the amount of pain Plaintiff experienced, as measured by unspecified objective and subjective criteria. (Tr. 245). In a report dated July 27, 1998, Dr. Calderon stated that Plaintiff had been "diligently and seriously working" during each session of therapy, but had slow and minimal progress "due to the seriousness and intensity of her pain." (Tr. 271). She stated that Plaintiff had slight long and short term memory impairment, difficulty with attention and concentration which might lead to problem solving deficits in work, social and learning situations, judgment difficulties, and depression mixed with extreme anxiety. She diagnosed Adjustment disorder with mixed anxiety and depressed mood, Cognitive disorder NOS, possible Attention-Deficit/Hyperactivity disorder, Pain disorder associated with both psychological factors and chronic medical condition. (Axis I). On Axis IV, which addresses psychological and environmental problems, Dr. Calderon stated that Plaintiff was unable to resume work and that pain interfered with all aspects of daily functioning. Finally, she assigned a global assessment of functioning (GAF) of 50, indicative of serious impairment in social, occupational or school functioning. Diagnostic & Statistical Manual of Mental Disorders, Fourth Edition, p. 32. (Tr. 270-271). On December 2, 1998, and again on January 8, 1999, Dr. Lewis indicated that Plaintiff would be tapered off analgesics because of lack of financial coverage. (Tr. 232, 231).

5.      Plaintiff was evaluated by David Sachs, PhD., at the request of the Disability Determination Unit, on June 4, 1999. (Tr. 272-275). As of the time of this evaluation, Plaintiff had been off pain medication for 9 weeks. Dr. Sachs interviewed Plaintiff, conducted a mental status exam and administered several psychological tests. He found that she had average intelligence, worked slowly but with good persistence on complex tasks and had no significant difficulty with problem solving. He felt that she had mild impairment with sustained attention to complex tasks but overall had quite

good functioning. He diagnosed Cognitive disorder NOS (Axis I), pain which interfered with the consistency of her work (Axis IV) and assigned a GAF of 50.

6.      Starting in the Fall of 1996, Plaintiff began accompanying her husband, who is a truck driver, on long-haul trips, assisting him with paperwork. They are on the road for approximately half a year "when possible." Circumstances that interfere with this activity are unconnected to Plaintiff's pain complaints[8]. (Tr. 29-32). In 1998 Plaintiff helped out in her daughter's 3rd grade class room for half a day, twice a month. (Tr. 105). Since December 1999, when at home, she has worked at her mother's saw mill two days a week, for 2-6 hours a day, as an office helper. This work includes driving into town for parts or to run other errands, meeting people in the office when her mother is not available and answering the telephone. (Tr. 32). In addition, she helps tend to the trees in her mother's fruit orchard, watering, picking fruit and seeing if the trees are in good health (Tr. 46).

7.      At the time of her administrative hearing, Plaintiff testified that she experienced extreme sensitivity on the left side of her face from nerve damage, as well as constant headaches. (Tr. 35) Her headaches become "bad" two or three days a week (Tr. 45), and when bad, she is in bed for three or four days and can't work. (Tr. 38). She testified that headaches also affect her ability to sleep (Tr. 47) and prevent her from engaging in heavy lifting, bending over and walking extended distances[9]. (Tr. 36). She testified that she stopped taking medication for headache pain when worker's comp

---

[8] Q: In a year's time, how much of that year will you spend on the road with him.
   A: If possible, half, but it's not always possible.
   Q: Why not?
   A: Having to be home to take care of business, trying to maintain a home life, and an 11-year old daughter.
(Tr. 30).

[9] Plaintiff testified that some days headaches prevented her from walking the 9 acres between her home and the office in which she works for her mother. (Tr. 36)

cut off her medical support in the spring of 1999. (Tr. 38).

### ALJ's Decision

8.      The ALJ found that Plaintiff had a severe impairment or combination of impairments which had more than a minimal effect on her ability to work, citing to her facial injury, post-traumatic headaches and pain syndrome associated with her left trigeminal nerve.  He noted that pain medication and nerve blocks did not provide relief of pain, and that Plaintiff was treated for adjustment disorder with mixed anxiety and depressed mood, cognitive disorder NOS, possible ADHD and pain disorder associated with psychological and medical factors.  He referred also to Dr. Sachs' diagnosis of Cognitive disorder NOS, with quite good functioning. (Tr. 13-14).  The ALJ discounted Plaintiff's credibility, finding that she exaggerated the degree of pain she experienced. (Tr. 14).  He determined that Plaintiff retained the residual functional capacity ("RFC" herein) for simple, repetitive, light work despite non-exertional impairments, and was therefore not disabled pursuant to Rule 202.18 of the Medical-Vocational guidelines ("Grids" herein)[10]. (Tr. 15).

### Issues on Appeal

9.      Plaintiff contends that the ALJ's credibility determination is not supported by substantial evidence[11], and that the ALJ erred by applying the Grids in light of her nonexertional impairments.

---

[10] The ALJ also found at step four of the sequential evaluation process that Plaintiff had failed to establish an inability to perform her past work as a gas station cashier. (Tr. 15). Neither Plaintiff or the Commissioner acknowledged this finding. The record is inadequate to make a determination at step four because there is no evidence regarding the physical and mental demands of Plaintiff's work as a gas station cashier. See Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). Accordingly, I deem the ALJ's step four finding unsupported by substantial evidence.

[11] Plaintiff's first point on appeal is that the ALJ erred in finding that her complaints of disabling headache and face pain were not entirely supported by the evidence as a whole to the disabling degree alleged is not supported by the evidence and law. Her third point on appeal is that the ALJ's pain and credibility finding was contrary to evidence an law. These points will be considered together.

Standard of Review

10.     The Social Security Act provides that final decisions of the Commissioner shall be subject to judicial review. 42 U.S.C. §405(g). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . " Id. I review the Commissioner's decision to determine only whether the decision is supported by substantial evidence and whether correct legal standards were applied. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence is more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable man might accept to support the conclusion. Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The determination of whether substantial evidence supports the Commissioner's decision is not a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes a mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). I will not reweigh the evidence, but will examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision in order to determine if the decision is supported by substantial evidence. Glenn, 21 F.3d at 984.

11.     The Commissioner has established a five-step sequential evaluation process to determine if a claimant is disabled. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988). If a claimant is determined to be disabled or not disabled at any step, the evaluation process ends there. Sorenson v. Bowen, 888 F.2d 706, 710 (10th Cir. 1989). The burden of proof is on the claimant through step four, and shifts to the Commissioner at step five. Id.

Analysis

The ALJ's Credibility Determination Is Supported by Substantial Evidence

12.     The ALJ found that Plaintiff's complaint of severe pain which prevented her from performing

any significant activities was not entirely supported by the evidence as a whole to the disabling degree alleged. (Tr. 14). Credibility determinations are peculiarly the province of the finder of fact, and will not be upset when supported by substantial evidence. Diaz v. Sec'y of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990) cited in Kepler v. Chater, 68 F. 387, 391 (10th Cir. 1995). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Huston v. Bowen, 838 F.2d 1125, 1131, 1133 (footnoted omitted) (10th Cir. 1988). The ALJ must "articulate specific reasons for questioning the claimant's credibility" where subjective pain testimony is critical. Kepler v. Chater, 68 F.3d at 391 (internal quotations omitted).

13.   The ALJ cited to several factors in discounting Plaintiff's credibility. I will address each.

– *Plaintiff spends half the year on the road with her husband, living in the cab of is truck, and has done so for three and one-half years [12]*. This statement is supported by the record. (Tr. 24, 29-32).

– *Plaintiff does paper work for her husband.* This statement is supported by the record. (Tr. 29).

– *Plaintiff works two days a week doing office work at her mother's saw mill.* The full record indicates that Plaintiff started this work in 1999, and worked two-six hour days, two days a week for that part of the year that she is not traveling with her husband. (Tr. 32). The ALJ determined that this work did not constitute substantial gainful activity. (Tr. 13)

– *Plaintiff complains of constant headaches, headaches caused by nerve damage and*

---

[12]Since approximately September 1996.

*facial sensitivity. However, her migraine headaches had been reduced to two in a three month period (citing to a May 22, 1996 report from Dr.Lewis, Tr. 184).* Both Dr. Lewis and Dr. Marjama-Lyons noted dramatic reduction in frequency of migraine headache in May 1996, after Plaintiff began taking Methadone. (Tr. 128, 184). However, the pain related to trigeminal neuralgia pain did not reduce significantly, and use of narcotic pain medication offered provided only temporary relief. (Tr. 128, 184, 126, 183, 181, 182, 180, 179, 178, 177, 176, 209, 175, 174, 172, 171, 208, 170, 169, 168, 167, 166, 165, 245, 244, 162, 234, 233, 232, 231, 94).

– *Plaintiff testified that she can hike no more than two to three miles.* This is a misstatement of the record. Plaintiff testified that her pain increased when she engaged in a lot of physical exertion, and that she could no longer go on the two to three mile hikes she and her daughter used to take. (Tr. 36).

– *Plaintiff no longer takes pain medication.* This statement is supported by the record. (Tr. 38).

– *Because Plaintiff works part time and her husband works full time, she could afford pain medication if it were really necessary.* The record does establish that Plaintiff worked on a part time basis for her mother, and that her husband was employed as a truck driver. There is no evidence in the record of the amount of their combined earnings or expenses.

– *Plaintiff is able to perform household chores.* This statement is supported by the record. (Tr. 39-40,

– *Plaintiff gets along well with family members.* This statement is supported by the

9

>   record.  (Tr. 96, 39).
>
> –  *Plaintiff's workers' compensation claim was settled on the basis of permanent, partial disability* (citing to Tr. 122--124).  This statement is supported by the record. (Tr. 122-124).
>
> –  *Plaintiff's treating neurologist refused to consider her disabled, insisted that she should work, and found that she had a 50% impairment due to neurogenic pain* (citing to Dr. Marjama-Lyons June 13, 1996 report, Tr. 126).  This statement is supported by the record.

14.  The evidence pertaining to Plaintiff's pain complaints is mixed.  She undoubtedly experiences pain which was evaluated as severe by all of her treating physicians.  However, she is able to engage in substantial activities despite her pain complaints.  Because I cannot reweigh the evidence, and because the ALJ adequately supported his credibility findings with substantial evidence, in accordance with the requirements of  Kepler v. Chater, I find that the ALJ did not err in assessing Plaintiff's credibility.

Plaintiff's Non-exertional Impairments Precluded Use of the Grids.

15.  The ALJ decided that claimant was not disabled under Rule 202 .18 of the grids.   (Tr. 15). The grids may be use only when a claimant's RFC, age, work experience, and education precisely match a grid category. Gossett v. Bowen, 862 F.2d at 806.

16.  The presence of a nonexertional impairment may preclude reliance on the grids. See Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir.1993).  Pain, mental impairment and postural limitations fall within the regulatory description of nonexertional impairments. See 20 C.F.R. Pt. 404, subpt. P, App. 2, § 200.00(e).  Therefore, unless there is substantial evidence to support the ALJ's

10

finding that Plaintiff's non-exertional impairments had no effect on her RFC for a full range of light work, her characteristics do not precisely match Rule 202.18, and the ALJ is precluded from relying on the grids for a conclusive determination of nondisability. See Daniels v. Apfel, 154 F.3d 1129, 1132 (10th Cir.1998).

17.    This record does not support the ALJ's finding that there was no consecutive 12-month period during which Plaintiff's chronic pain, postural limitation and cognitive disorders had no effect on her RFC for a full range of light work.  Although the ALJ found that Plaintiff exaggerated her pain and functional limitations, he also found that she continued to experience post-traumatic headaches and a pain syndrome associated with the left trigeminal nerve, that nerve blocks did not relieve her pain, that medication improved her pain for a limited number of hours, that her treating neurologist found her to have suffered a 50% impairment on the basis of neurogenic pain, that surgery to reduce pain was unsuccessful, that she had some memory impairment and was somewhat slow due to a cognitive disorder.  In addition, Plaintiff's treating neurologist stated that she should avoid bending, a posture that is required to do almost any kind of work. Social Security Ruling 85-15, 1985 WL 56857, at *7.

Conclusion

18.     For these reasons, Plaintiff's Motion to Reverse and Remand for rehearing is granted, and this matter is remanded to the Commissioner for additional proceedings to include obtaining of vocational testimony in order to evaluate this matter at step five of the sequential evaluation process.

_____

**Richard L. Puglisi**
**United States Magistrate Judge**
**(sitting by designation)**